The issue in this case is whether the defendants were the owners of the animal questioned at the time my client was injured back in 2009. Based on the deposition and documents that we reviewed, I think this is the history behind this. When Daniel Lesto moved from Minnesota to Illinois, he brought his Labrador Retriever with him. And with his fiancée rented some property from the fiancée's grandmother and her partner. And they're the remaining defendants in this case. As you're aware, Mr. Lesto is not here because he filed bankruptcy and is no longer a part of the case. The defendants owned a 75-acre farm. And on the farm, one of the other things, there was a farmhouse across the street from the barn. The depositions of the parties and Mr. Lesto make it clear that he and his fiancée only leased the farmhouse. They didn't lease the barn or any other property on the farm. That remained under the ownership and control of the defendants. It's also clear that Mr. Lesto wanted to keep his dog in the farmhouse, but was not allowed to do so by the owners of the property, who again are the defendants. So in their direction, the dog was taken out of the farmhouse and was kept in the barn across the street, which was never leased. This is not an absentee landlord case. It was never leased to Mr. Lesto or his fiancée. It's also, I think, important to recognize that both Mr. Lesto and his fiancée had obligations, both as students and also as employees, so that the dog in question spent the vast majority of its time in the barn owned by the defendants. And that barn was adjacent to the highway where this tragedy took place. Now, did they feed the dog in the barn? Who fed the dog? I'm assuming that Mr. Lesto fed the dog. Was there any evidence brought into evidence that the trial who took care of the dog? I think so. I think in his deposition, Mr. Lesto said, I'm the one who took care of the dog. I'm the one who laid the dog. I don't think the defendants played that kind of role with the dog. But as you know, the statutory definition of owner includes anybody who steps into the shoes of an owner. And our position is, in this case, the owners. First of all, this was a permanent situation. It wasn't temporary. That dog was always going to stay in the barn. How long was the dog there? Well, we know that two younger people were gone the whole day, either at school or working. And plus, the dog slept. So the dog's there all day and all night. And that's where the dog lived, unless it was let out to play or whatever. But for months or weeks or weeks? No, it wasn't. How long was the dog there? It was a long time. I think the lease, well, the actual written lease was signed after they moved in. But it was consistent with the agreement with the dog. A year, a month? So it was over a year. And it was also not for the benefit of Mr. Lesto. It was for the benefit of the landlords. Because Mr. Lesto, as he said over and over again, wanted to keep the dog in the house that he leased. So the question becomes then, is that enough to make the defendants owners under the ownership of the patroller? And our answer is absolutely. For two reasons. One is the word harbor. If they harbor a dog, they become owners. All that means is they provide shelter or lodging. Well, they did. The dog lived its life in the building that they owned. And it wasn't leased. They owned it, had control over it. They kept farm property in there. They kept hay in there. It was their building. So, with the covenant definition of the word harbor, that definition is to provide lodging or shelter. And that's exactly what they did. And they did it for their benefit to keep the dog out of the house so that the dog wouldn't do any damage to that house that was leased to Mr. Lesto. The second reason they're owners are that they knowingly, obviously knowingly, they demanded the fact, allow the animal to remain on premises that they own. And again, we're talking about the farm. And I think those facts are critical. Because, again, half the cases cited by the defendant in this case rely on absentee landlord cases, but that's not what this is. So our position is that at a minimum, Judge Paisley was correct when the defendants first filed a motion for summary judgment. We said, look, a jury can obviously look at this and decide that their owner is under the act and therefore have responsibility for the plaintiff's damages. We think the evidence is so strong that the summary judgment should have been granted on our behalf. And the reason is that if you look at the statute, there's no mention of the word care or control. If you harbor a dog, you're responsible. If you let the dog stay on property that you own, you're responsible. Some of the case law says that defendant, to be an owner, has to have some control over the animal. Well, what are the issues in this case? Who decided where the dog lived? Well, it was the defendants, not Dan Lesto. Lesto wanted to keep the dog somewhere else. Whose benefit was it for? It was a benefit for the defendants. Again, Mr. Lesto didn't want to keep his dog across the street from the barn. He wanted to have it at home. If you look at the case law. I have a question. You have to have control over the animal or control over the person that's leasing the house? You have to have some control over the animal. So he had control over the animal. Right, and they did. They determined where that dog spent its entire life and provided the barn. So you're responsible for, say, any kind of dog that would run in your barn? No, no, no. This was a permanent situation, not a temporary one. And it was asked. Slept there every night, right? Slept there, ate there, spent all day there, waiting for somebody to come play with him. I mean, that's why he wanted to get out, probably. Spent all day in the barn. Because the owner, the guy that owned the barn, wouldn't play with him. Pardon me? The owner of the barn wouldn't play with him. Is that what you're saying? Well, the person who brought the dog had other obligations. But he wanted the dog to be with him in the house. So when they were having dinner up in the morning, the dog would be there. Then the landlord said, You can't do that. It's right in the lease. And they said, That was our agreement before the lease was signed, and it's right in the lease. The dog can't stay here. So that decision was made by the landlord. And our position is that certainly gives them control. There's a recent case out of the 2nd District that would have given Mr. Lesko an argument that he wasn't an owner of this dog. And that case said that when an individual takes their dog to the vet and turns it over to the vet parent, and the vet, while the veterinarian has the dog in place of somebody, it's the vet that's responsible under the OMIM control, not the person who has the papers on the dog, feeds the dog, or tests the dog. That's because he had control of the dog. At the moment, he had control of the dog. So this guy, so the guy that owns the barn has control of the dog. Is that what you're saying? Absolutely. Made a decision where the dog lived, knew that barn was next to the highway, and it was a permanent situation, and it was for their benefit. If you look at that Frost versus Rovain case we cited, those are the issues. You know, where was the dog when it got loose? Well, it was a property owned by the defendants. Well, was it a temporary or was it a permanent arrangement? Well, it was permanent. Well, was it for the benefit of the landlord or was it for the benefit of the lessee? Well, it was for the benefit of the landlord. I mean, we meet all the requirements to make these people owners under the ant. That recent case says, you know, this is not strict liability. If I own a dog and I give it to my cousin to look at for a week, well, if it's with my cousin for a week and it causes some problem, my argument is, look, sure, I own the dog, but for the purpose of being able to control that, I'm not an owner. There's no strict liability. It has to be the person who has control of the dog all the time. In this case, I think all these people, that's why we sued all of them. One's out because of bankruptcy. But I just can't fathom how the defendants can argue after saying, look, the dog can't stay in the house. The dog's got to go on the farm. We own the farm. We know the highway is there. How can you possibly say they have no control over this dog? Because they're the ones who determined where the dog spent its life, and they determined where that dog was supposed to be retained. And this whole act was to protect the public. And by putting the dog in a place where it escaped, knocked my client off the motorcycle, they didn't do it. As a result, they're owners under the act, and they have responsibility as an owner. And, again, at a minimum, I agree with Dr. Ingle, and I agree with Judge Paisley, at a minimum this should be a decision made by a jury because a jury can certainly come to the conclusion that under either one of those two tests, the defendants were no longer the dog. And so I don't know that summary judgment is appropriate. But if it is, I think we have a stronger argument because of the role these people played in where the dog stayed and how he was restrained and what eventually happened to my client. All right. Counsel. Good morning. Counsel. I want the record to be clear here. My understanding is that this was a much-loved dog, and the owner played with it a lot. On this particular occasion, the owner couldn't play with him because he was at work, apparently. But we shouldn't make this case something that it is not. And, Your Honor, you touched on the point. The cases that Pointiff has cited here and the cases that the authority that Pointiff relies on are cases where a third party, non-owner of an animal, has taken some degree of control over an animal in a certain situation when the animal causes an injury to a third party, to the ultimate pointer. This is not that case. In this particular case, the defendants are the landowners. They own the house. They own the land across the street. They own the barn. They own all those things. And what they did was restrict the dog owner's occupancy of that premises by telling the dog owner in the lease that he could not possess the dog in the house. Now, the facts of the matter are that they authorized the guy to keep the dog in the barn,  but they didn't tell him you've got to keep the dog in the yard. They didn't tell him you've got to keep the dog in somebody else's house or placed in a kennel or some other place. They didn't care where the dog went, as long as the dog wasn't in the house. And the obligation, then, to house the dog someplace other than in the house fell on the owner of the dog. In this particular case, the evidence is that the owner bought a pen, or owned a pen, I guess, from when he moved before. But he owned a pen. He brought the pen with him. He asked for permission to put the dog in the barn. He put the pen in the barn. He kept the dog in the pen, apparently locked up, and on some occasion the dog got out. But to answer Your Honor's question, the owner of the dog fed the dog, bathed the dog, took care of the medical care for the dog, did everything else that needed to be done for the dog in the absentee, and I'm going to use the term loosely, the absentee landlord, had nothing to do with the dog other than to greet it on occasion when they were there at the premises. This is not a case that imposes liability under the statute. As Your Honor has indicated, the statute imposes an obligation on a person who takes control of the dog. Under Steinberg v. Petta, they define owner to include somebody who is harboring or keeping an animal, and that harboring or keeping must involve some measure of care, custody, and control. So that third party, whoever it is that accepts that responsibility and says, yeah, I'll take care of the dog for whatever temporary or permanent arrangement may be made, they owe some obligation under the statute. In this particular case, what has occurred is that the owners put a restriction not on the dog, but on the owner of the dog. They told the owner of the dog what he could and could not do with the dog. He could do anything he wanted as long as he didn't keep the dog in that house. And it's the owner's responsibility then, the owner of the dog, to provide for the dog under those circumstances. There isn't any liability under this statute for that set of circumstances. And as a consequence, the Circuit Court's decision on summary judgment in this case is correct, and we'd ask you to affirm it. Thank you. Counsel? I do want to say something, though, about the record. There's nothing in the record that supports that description of what happened. All we know is that the landlord said, writing in the order, you can't keep the dog in the house. No one said you could take the dog to a neighbor anywhere else. All we know is the dog ended up in the barn across the street that's owned by the landlords. There's also nothing in the record, as we point out in our brief, about Mr. Lester O'Brien supplying the pen. In fact, if you look at the language in there, you would assume otherwise, because when I asked if it was a pen for a dog, he said, well, it was originally bought, I assume it was for a dog, which leads me to believe he found it in the barn. He didn't go out and buy it. It was there. So I want to make sure that that's understood that it wasn't in the record. When you say it was there, you mean there was always a pen in the barn? Well, I don't know. Is that what you're saying? But the records, there's nothing in the record that says the landlord said, okay, you can't keep the dog in the house. And Lester said, well, can I keep him in the barn? And they said, well, give him a pen for it. I mean, there's nothing like that in the record. I saw something in the brief about a pen, but I didn't know where it came from. But if you read the record, well, the defense counsel, with all due respect, puts in his current brief that Lester O'Brien supplied the pen, and he cites his prior motion of summary judgment where he said the same thing. We say he's wrong twice. There's nothing in the record that says, don't know that it makes any difference, because the landlords obviously knew for a long period of time that the dog was being housed in the barn that they owned. I'm not sure it makes any difference. Once they accepted that responsibility, I shouldn't use the word accept. There are the ones that said you can't keep the dog, Mr. Lester, or you might keep it. Is there anything in the record that says you can keep it in my barn? We don't know whether. Well, sure. You don't know where the risk is. Well, we don't know. We don't know how to think about whether they can know that they're going to agree that that's where the dog was kept. So the dog ends up in the barn. But you don't know how he got there? Well, by agreement of the parties. Oh, so there was an agreement. Well, I assume so. Is that in the evidence? Is assume in the evidence? Yeah. Well, what's in the evidence is that's where the dog lived. Okay, the dog lived. So if you have mice, you better be careful so nobody gets excited and runs away. Well, you know, it raises other issues. I mean, that car is right next to a highway. The dog is chasing cars. I mean, it was important for them to keep that dog in the frame. And they didn't do it. So Doug Whitten gets home from the second floor. When you say they, it's important for who? The landlords. The guy that lived there? It's their building. It's their building. They don't have dogs in there. And the dog's in there because they said you can't keep it in the house that we own. But you can't keep it in the barn. They didn't say what? Did they say you can keep it in the barn? Well, certainly. That's what they knew. Absolutely. They knew the dog was in there. But what we don't know is whether they said you have to keep it there or whether there was some discussion and they agreed that was a good spot. Couldn't build a dog there. It's right across the street. They could have done other things. Sure. Absolutely. But, you know, the irony is my client completes two tours of duty in Afghanistan, comes home, gets on a motorcycle to visit his mother, and this dog escapes and runs him down. And the military career's over. I have a bunch of medical bills. This is an act to provide for public safety. Anyone who does something like this, when you say you can't keep the dog there, you've got to keep it somewhere else, keep it in the building I own, I'd better be sure that that dog can't escape because I've just taken control of where that dog lives. And if he gets out, you can cause problems because he's 100 feet from a county highway, which is exactly where he happens. So, thanks. Thanks, fellas.